# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### MIAMI DIVISION

## CASE NO. 06-20596-CR-GOLD/GOODMAN

UNITED STATES OF AMERICA

v.

EDIL RIGOBERTO GALEAS MATUTE,

      Defendant.

_____/

## REPORT AND RECOMMENDATIONS ON MOTION TO DISMISS INDICTMENT

After the Eleventh Circuit in *United States v. Bellaizac-Hurtado*, 700 F.3d 1245 (11th Cir. 2012) found the Maritime Drug Law Enforcement Act, 46 U.S.C. § 1901 *et seq.*, ("MDLEA"), unconstitutional as applied to drug trafficking activities in the territorial waters of another nation, defendants have unleashed a torrent of claims challenging their MDLEA convictions.[1] This is one such claim. Like the results in similar challenges, Defendant's motion here fails for procedural, jurisdictional, and substantive reasons.

Defendant Edil Rigoberto Galeas Matute ("Matute") seeks to dismiss his indictment approximately six years after he was sentenced, based on *Bellaizac-Hurtado*. [ECF No. 225]. The District Court referred Matute's motion to the Undersigned. [ECF

---

[1]    *See, e.g., Chavez v. Hollingsworth*, No. CIV. 12-7676 RMB, 2013 WL 3284995 (D.N.J. June 27, 2013); *Rodriguez-Renteria v. United States*, No. 8:13-CV-1406-T-30EAJ, 2013 WL 2382277 (M.D. Fla. May 30, 2013); *Matute-Santos v. Hollingsworth*, No. CIV. 12-7778 RMB, 2013 WL 2352620 (D.N.J. May 29, 2013); *United States v. Padilla-Gonzalez*, No. 8:08-CR-288-T-23MAP, 2013 WL 2155090 (M.D. Fla. May 17, 2013); *Jiminez v. United States*, No. 8:13-CV-975-T30MAP, 2013 WL 1686277 (M.D. Fla. Apr. 18, 2013).

No. 232]. The Undersigned has considered the motion, the Government's response, Matute's reply, and the pertinent portions of the record. The Undersigned **respectfully recommends** that Matute's motion be **denied with prejudice** because it is procedurally improper, jurisdictionally flawed, and incorrect on the merits. If construed as a 28 U.S.C. § 2241 petition, then Matute's submission should be dismissed with prejudice, and the Undersigned **respectfully recommends** this result, as well.

## I.      BACKGROUND

On September 4, 2006, the United States Coast Guard intercepted a Honduran flagged fishing vessel in international waters (about 90 miles from Colombia's coast). [ECF Nos. 225, p. 1; 227, p. 12]. The Coast Guard boarded the ship, discovered approximately 1,000 kilograms of cocaine, and then arrested Matute, the captain, and his crew. [ECF No. 227, p. 14].

On September 21, 2006, the grand jury returned an indictment against Matute and his crew, charging them with possession with intent to distribute cocaine and conspiracy to possess with intent to distribute cocaine, in violation of 46 U.S.C. §§ 1903(a) and (j) of the MDLEA. [ECF No. 35]. Matute pled guilty to Count I (conspiracy to possess with intent to distribute cocaine) and on March 6, 2007 was sentenced to 120 months in prison. [ECF Nos. 62; 63; 113; 117; 227].

Approximately six years after he was sentenced, on February 20, 2013, Matute filed the instant motion to dismiss his indictment based upon the following three

2

substantive arguments: (1) the MDLEA is unconstitutional as applied and, thus, the District Court lacked jurisdiction over him; (2) the District Court should dismiss the indictment under its supervisory powers; and (3) the Government should dismiss the indictment under Federal Rule of Criminal Procedure 48(a). [ECF No. 225, pp. 4-9].

Procedurally, Matute argues that he may raise a jurisdictional argument at *any* time. [*Id.* at pp. 1-4]. Alternatively, Matute argues that his motion should be construed as a 28 U.S.C. § 2241 petition brought through the "savings clause" of 28 U.S.C. § 2255(e). [*Id.* at p. 10].

On April 8, 2013, the Government filed its response in opposition, which focused mainly on the MDLEA's constitutionality after *Bellaizac-Hurtado*. [ECF No. 228].

On July 29, 2013, more than three months after the Government filed its response, Matute filed his 15-page reply. [ECF No. 236]. Matute's reply raises an additional argument about why his indictment should be dismissed: he contends the MDLEA is facially unconstitutional because it violates the Fifth and Sixth Amendments.

Matute's reply violates Local Rule 7.3(c) in three ways. First, it was filed well after the seven-day limitation to file a reply. *See* Local Rule 7.3(c)(1)(A). Second, it exceeds the 10-page reply limit. *See* Local Rule 7.3(c)(2). Finally, the reply improperly raises new and additional arguments in support of Matute's motion. *See* Local Rule 7.3(c). While the reply can, and perhaps should, be stricken, the Undersigned will nevertheless consider it.

II.    **DISCUSSION**

The Undersigned will first address the procedural bars confronting Matute and then address Matute's substantive arguments.

A.  **Procedural Bars**

Generally, 28 U.S.C. § 2255 is the exclusive remedy for challenging the validity of a federal conviction and/or sentence, unless the remedy is inadequate or ineffective. *Broussard v. Lippman*, 643 F.2d 1131, 1134 (5th Cir. 1981); *Darby v. Hawk-Sawyer*, 405 F.3d 942, 944-45 (11th Cir. 2005) (internal citation omitted). Matute is careful not to classify his motion as a § 2255 because, in his case, § 2255's one-year period of limitation expired almost five years ago.[2] *See* 28 U.S.C. § 2255(f). To clear this temporal hurdle, Matute argues that he may move to dismiss an indictment containing a jurisdictional defect at any time. [ECF No. 225, pp. 4, 7-8]. Alternatively, he argues that his motion should be construed as a petition under 28 U.S.C. § 2241 through the savings clause of 28 U.S.C. § 2255(e). [ECF No. 225, p. 10].

1.    *Matute's Motion to Dismiss the Indictment is Untimely*

Matute claims that because the MDLEA is unconstitutional, the District Court lacked jurisdiction over him. He further claims that he may raise this jurisdictional

---

[2]    Matute's judgment of conviction was entered on March 6, 2007. [ECF No. 117]. Because no appeal was filed, the judgment of conviction became final 14 days after the entry of judgment. *See Mederos v. United States*, 218 F.3d 1252, 1253 (11th Cir. 2000) (un-appealed conviction becomes final when the time allotted for filing an appeal expires).

defect through a motion to dismiss the indictment at any time, including approximately six years after he was sentenced. [ECF No. 225, pp. 4, 7-8]. Matute is incorrect.

A motion alleging a defect in the indictment must be raised before the trial, "but at any time while the case is *pending*, the court may hear a claim that the indictment . . . fails to invoke the court's jurisdiction or to state an offense." Fed. R. Crim. P. 12(b)(3)(B) (emphasis added). A case is not "pending" within the meaning of Rule 12 where the defendant has pled guilty, has been sentenced, and the period to appeal the conviction has long since passed. *United States v. Clarke*, 150 F. App'x 969, 970 (11th Cir. 2005) (affirming dismissal of motion to dismiss indictment filed more than a year after the defendant was sentenced because the case was not pending within the meaning of Rule 12); *United States v. Wolff*, 241 F.3d 1055, 1056-57 (8th Cir. 2001) (district court properly denied motion to dismiss indictment filed four years after defendant was sentenced because "after final judgment was entered and Wolff did not file a direct appeal, the proceedings were no longer pending").

Here, Matute filed his motion approximately six years after he had pled guilty and been sentenced. Thus, Matute's case "was not 'pending' within the meaning of Rule 12(b)(3)(B) when he filed his motion to dismiss," and the District Court must deny the motion. *United States v. Wellons*, 289 F. App'x 383, 384 (11th Cir. 2008) (affirming dismissal of motion to dismiss indictment filed more than seven years after conviction was affirmed, based on argument that district court lacked subject matter jurisdiction

5

over defendant because case was not "pending" under Rule 12); *accord United States v. Felder*, 220 F. App'x 951, 952 (11th Cir. 2007) (affirming denial of motion to dismiss indictment filed 14 years after conviction was affirmed because case was not pending); *Clarke*, 150 F. App'x at 970 (affirming dismissal of motion to dismiss indictment filed more than a year after the defendant was sentenced because the case was not pending).

Therefore, the District Court should deny the motion with prejudice.

**2.    *Matute Cannot Meet the Requirements of 28 U.S.C. § 2241***

Matute's next argument is that his motion should be construed as being a 28 U.S.C. § 2241 petition brought through the savings clause of 28 U.S.C. § 2255(e). [ECF No. 225, p. 10]. Even construing his motion as such, Matute still fails to meet  § 2241's requirements.

i.   Legal Standard for § 2241 Claims

As noted, collateral attacks on the validity of a federal conviction and/or sentence must generally be brought under § 2255. *Darby*, 405 F.3d at 944-45. Nevertheless, under § 2255(e)'s savings clause, a petitioner may file a § 2241 petition if the § 2255 remedy "is inadequate or ineffective to test the legality of the detention." 28 U.S.C. § 2255(e); *Sawyer v. Holder*, 326 F.3d 1363, 1365 (11th Cir. 2003). The petitioner bears the burden of demonstrating the inadequacy or ineffectiveness of the § 2255 remedy. *McGhee v. Hanberry*, 604 F.2d 9, 10 (5th Cir. 1979) (internal citation omitted).

But when is § 2255's remedy "inadequate or ineffective" so that a petitioner may bring a § 2241 petition through § 2255's savings clause? To date, the savings clause has primarily been used to permit claims based on *Bailey v. United States,* 516 U.S. 137 (1995), *superseded by statute,* Pub. L. No. 105–386, 112 Stat. 3469 (1998).

In *Bailey,* the Supreme Court construed the term "use" in 18 U.S.C. § 924(c) (1995) more narrowly than many circuits had and held that passive possession of a firearm during a drug crime was not a crime. *Bailey,* 516 U.S. at 150. Thus, *Bailey* established that many prisoners had been convicted and were serving sentences for a nonexistent crime: passively possessing a firearm during a drug crime. The prisoners who had already unsuccessfully pursued a § 2255 motion before *Bailey* was released were barred by § 2255(h) from bringing their claim in a second or successive § 2255 motion. In those circumstances courts allowed the prisoners to use the savings clause to bring their *Bailey* claims in a § 2241 petition. *See, e.g., Reyes–Requena v. United States,* 243 F.3d 893, 904–06 (5th Cir. 2001); *In re Jones,* 226 F.3d 328, 333–34 (4th Cir. 2000); *In re Davenport,* 147 F.3d 605, 607–11 (7th Cir. 1998); *Triestman v. United States,* 124 F.3d 361, 376–80 (2d Cir. 1997); *In re Dorsainvil,* 119 F.3d 245, 248 (3d Cir. 1997).

A petitioner may bring a § 2241 claim where: "1) that claim is based upon a retroactively applicable Supreme Court decision; 2) the holding of that Supreme Court decision establishes the petitioner was convicted for a nonexistent offense; and, 3) circuit law squarely foreclosed such a claim at the time it otherwise should have been

7

raised in the petitioner's trial, appeal, or first § 2255 motion." *Wofford v. Scott*, 177 F.3d 1236, 1244 (11th Cir. 1999).[3] After making this three-part showing, the petitioner then needs to demonstrate actual innocence. *Id.* at n.3.

"Only a court inside the district where the prisoner is confined has jurisdiction to grant relief pursuant to a § 2241 petition." *United States v. Saldana*, 273 F. App'x 845, 846 (11th Cir. 2008) (citing *Ledesma v. United States*, 445 F.2d 1323, 1323-24 (5th Cir. 1971)). If the § 2241 petition is filed in the incorrect judicial district, then the district court may dismiss the petition for lack of jurisdiction or, in the interest of justice, transfer it to the proper district. *Saldana*, 273 F. App'x at 846-47 (internal citations omitted); *Westine v. Scott*, 356 F. App'x 254, 255 (11th Cir. 2009).

    ii.   <u>Discussion</u>

Matute cannot demonstrate any of *Wofford*'s three requirements. First, Matute's claim is based on an Eleventh Circuit Court of Appeals decision, not "a retroactively applicable Supreme Court decision." *Wofford*, 177 F.3d at 1244. Second, because

---

[3]    In *Gilbert v. United States*, 640 F.3d 1293, 1319 (11th Cir. 2011) (en banc), *cert. denied*, 132 S. Ct. 1001 (2012), the Eleventh Circuit Court of Appeals appeared to retreat from *Wofford*'s three-part test as it applies to sentencing guideline errors that may no longer be raised in a § 2255 motion. *See Turner v. Warden Coleman FCI (Medium)*, 709 F.3d 1328, 1333-34 (11th Cir. 2013). But Matute's claim is not a sentencing guidelines error and *Wofford*'s three-part test remains viable. *See Williams v. Warden, Fed. Bureau of Prisons*, 713 F.3d 1332, 1341-45 & n.4 (11th Cir. 2013) (noting that *Gilbert* was limited to errors in the application of the violent crime sentencing enhancement and applying *Wofford*'s three-part test); *Marshall v. United States*, 514 F. App'x 936, 937 n.3 (11th Cir. 2013) (explaining that *Wofford*'s three-part test remains viable).

Matute's claim is not based on a retroactive Supreme Court decision, Matute cannot demonstrate "the holding of that Supreme Court decision establishes . . . [that he] was convicted for a nonexistent offense." *Id.* Finally, in order to show that circuit law squarely foreclosed his claim from being previously raised, Matute must "point to then-binding circuit precedent, subsequently overruled by the Supreme Court, that barred his claim during his earlier proceedings." *Williams v. Warden, Fed. Bureau of Prisons,* 713 F.3d 1332, 1344 n.4 (11th Cir. 2013). Matute has not done so. Accordingly, because Matute has failed to meet *Wofford*'s three-part test to bring a § 2241 petition through § 2255's savings clause, his motion/petition must be denied and dismissed with prejudice.

Construing Matute's motion as a § 2241 petition means that it must be dismissed for another reason: it was filed in the incorrect judicial district. Matute is incarcerated at the C.C.A. Correctional Facility in McRae, Georgia. [ECF No. 225, p. 13]. As such, the District Court must dismiss the petition, or, in the interest of justice, transfer it to the proper district. *See Saldana,* 273 F. App'x at 846-47; *Westine,* 356 F. App'x at 255. The Undersigned respectfully recommends that the District Court dismiss (or deny) Matute's petition, rather than transfer it. Matute has failed to demonstrate that he may bring a claim under § 2255's savings clause through a § 2241 petition and, as will be shown below, Matute's substantive arguments are meritless. As a result, a transfer of his petition (which he calls a motion) to another district will not serve the interest of justice, but will only further waste judicial time and resources.

9

B. **Matute's Arguments are Meritless**

Even if his motion were not procedurally barred, it would *still* fail on the merits. Matute makes four arguments in his motion and reply: (1) the MDLEA is unconstitutional as applied and thus the District Court lacked jurisdiction over him; (2) the District Court should dismiss the indictment under its supervisory powers; (3) the Government should dismiss the indictment under Federal Rule of Criminal Procedure 48(a); and (4) the MDLEA is facially unconstitutional because it violates the Fifth and Sixth Amendments. [ECF Nos. 225, pp. 4-9; 236]. The Undersigned will examine each of Matute's arguments.

1. *The MDLEA is Constitutional as Applied*

Matute was arrested about 90 miles from Colombia's coast. He argues that this means that he was arrested in Colombia's territorial waters and, as a result, the MDLEA is unconstitutional as applied to him under *Bellaizac-Hurtado*. Therefore, he argues, the District Court never had jurisdiction over him.

In support of his position that he was arrested in Colombia's territorial waters, Matute argues that customary international law, as reflected in the United Nations Convention on the Law of the Sea, Dec. 10, 1982, 1883 U.N.T.S. 397 ("UNCLOS"), recognizes a 200-mile Exclusive Economic Zone ("EEZ") for coastal states. According to Matute, this means that Colombia's sovereignty extends for 200 miles from its coast. As

outlined below, however, courts, including the Eleventh Circuit Court of Appeals, have already rejected that argument.

i.       *Bellaizac-Hurtado* and the Law of the Sea

In *Bellaizac-Hurtado*, the Eleventh Circuit, on direct appeal, vacated the defendants' MDLEA convictions for drug trafficking because it found the MDLEA was unconstitutional as applied to the defendants' drug trafficking activities. Specifically, the appellate court found that Congress lacked the constitutional authority to punish drug trafficking in the *territorial waters of another nation* (i.e., Panama, in that case). *Bellaizac-Hurtado*, 700 F.3d at 1257-58. The appellate court, however, reaffirmed long-standing circuit precedent that Congress possessed the constitutional authority to punish drug trafficking that occurs in *international waters*. *Id.* at 1257.

Here, there is no dispute that Matute was arrested approximately 90 miles from Colombia's coast. [ECF No. 225, p. 2]. Thus, whether the MDLEA is unconstitutional in this case depends on whether Matute was arrested in international waters or in Colombia's own territorial waters.

In broad general terms,[4] customary international law, as reflected in UNCLOS, recognizes that every state (international) may have its sovereignty extend 12 miles beyond its coast. This area is commonly referred to as the territorial sea. *See* UNCLOS,

---

[4]      For a more in-depth analysis, *see United States v. Carvajal*, No. CRIM.A. 10-106, 2013 WL 619890 (D.D.C. Feb. 20, 2013).

Art. 2 ("[e]very state has the right to establish the breadth of its territorial sea up to a limit not exceeding 12 nautical miles"); *Territorial & Maritime Dispute (Nicar. v. Colom.)*, 2012 I.C.J. No. 124 (Nov. 19) ("ICJ Decision"), ¶ 177. Thus, within the territorial sea, a state possesses complete sovereignty.

The United States signed UNCLOS, but did not ratify it. Nevertheless, the United States recognizes UNCLOS as customary international law and recognizes a 12 mile territorial sea. *See* Presidential Proclamation No. 5928, Dec. 27, 1988, 54 Fed. Reg. 777 (1988); *Argentine Republic v. Amerada Hess Shipping Corp.,* 488 U.S. 428, 441 n.8 (1989); *United States v. McPhee,* 336 F.3d 1269, 1273 (11th Cir. 2003) ("[t]he United States generally recognizes the territorial seas of foreign nations up to twelve nautical miles adjacent to recognized foreign coasts") (internal citations omitted).

The EEZ refers to 200 miles of water from the baseline of a coastal state. UNCLOS, Art. 57. This does not mean that states enjoy sovereignty for 200 miles from their coast. Instead, "[s]tates enjoy specific rights, rather than sovereignty, with respect to the continental shelf and exclusive economic zone." ICJ Decision, at ¶ 177; *see also* UNCLOS, Art. 56. The rights that states enjoy in the EEZ can generally be classified as *economic* ones, such as the exclusive right to exploit natural resources and the exclusive right to establish installations for economic purposes. UNCLOS, Art. 56; Presidential Proclamation No. 5030, Mar. 10, 1983, 48 Fed. Reg. 10605 (1983). The United States recognizes the EEZ. *See* Presidential Proclamation No. 5030, Mar. 10, 1983, 48 Fed. Reg.

10605 (1983); *WesternGeco L.L.C. v. Ion Geophysical Corp.*, 776 F. Supp. 2d 342, 366 (S.D. Tex. 2011), *reconsideration denied,* No. 4:09-CV-1827, 2011 WL 3608382 (S.D. Tex. Aug 16, 2011).

ii.  Discussion

Matute argues Article 86 of UNCLOS extends Colombia's sovereignty through the EEZ and therefore he was not arrested in international waters (a/k/a the high seas). But that is not the case. As discussed above, states enjoy certain rights in the EEZ, but sovereignty is not one of them. Thus, crimes committed in the EEZ are treated as occurring on the high seas. *See United States v. Carvajal*, No. CRIM.A. 10-106, 2013 WL 619890, at *9 (D.D.C. Feb. 20, 2013) (the high seas are "the waters beyond the coastal state's sovereignty, meaning those greater than twelve miles from the coast") (citing *United States v. Romero–Galue,* 757 F.2d 1147, 1149 (11th Cir. 1985)); *see also United States v. Salad*, 908 F. Supp. 2d 730, 733 n.1 (E.D. Va. 2012) ("acts of piracy committed in the exclusive economic zone . . . are treated as though they had been committed on the high seas") (internal citation and quotations omitted). There is simply no support for the proposition that Article 86 extended Colombia's sovereignty through the EEZ. *See Carvajal*, 2013 WL 619890, at *9 n.7 (rejecting argument that under Article 86 the high seas begin after the EEZ).

Consequently, because Matute was arrested in international waters, not in Colombia's territorial waters, *Bellaizac-Hurtado* does not apply and the District Court

did have jurisdiction over Matute. *Rodriguez-Renteria v. United States*, No. 8:13-CV-1406-T-30EAJ, 2013 WL 2382277 (M.D. Fla. May 30, 2013) (*Bellaizac–Hurtado* did not apply to defendant arrested 100 miles off Costa Rica's coast and thus motion to dismiss conviction based on *Bellaizac–Hurtado* was meritless); *cf. Matute-Santos v. Hollingsworth*, No. CIV. 12-7778 RMB, 2013 WL 2352620 (D.N.J. May 29, 2013) (defendant arrested 80 miles from Panama's coast).

### 2. *Dismissal of the Indictment by the District Court*

Matute's second substantive argument is that the District Court should exercise its inherent supervisory powers and dismiss his indictment. [ECF No. 225, p. 9]. But Matute does not state *why* the District Court should do so.

Generally, "[t]he supervisory power doctrine is designed and invoked primarily to preserve the integrity of the judicial system and to prevent the federal courts from becoming accomplices to government misconduct." *United States v. Noriega*, 746 F. Supp. 1506, 1535-36 (S.D. Fla. 1990) (internal citations and quotations omitted), *aff'd*, 117 F.3d 1206 (11th Cir. 1997). A district court may invoke its inherent supervisory power to dismiss an indictment. *See, e.g., United States v. Holloway*, 778 F.2d 653 (11th Cir. 1985); *United States v. Pabian*, 704 F.2d 1533 (11th Cir. 1983). But because dismissing an indictment is a harsh remedy, "it is reserved only for flagrant or repeated abuses which are outrageous or shock the conscience." *Noriega*, 746 F. Supp. at 1535-36 (internal citations and quotations omitted).

Delineating the exact circumstances in which district courts may invoke their inherent power to dismiss an indictment is impractical. A district court's exercise of this inherent power lacks any definitive contours and like "constitutional rules . . . [it] end[s] in a penumbra" where the district courts have a certain freedom to determine its use according to the circumstances of each case. *Danforth v. Groton Water Co.*, 59 N.E. 1033, 1034 (Mass. 1901) (Holmes, J.). Nevertheless, the most common circumstance for its use in this circuit is the dismissal of indictments where there is prosecutorial misconduct and the defendant has been prejudiced as a result. *See, e.g., United States v. O'Keefe*, 825 F.2d 314, 318 (11th Cir. 1987) (affirming denial of motion to dismiss because, while prosecutor's behavior was less than exemplary, the defendants failed to demonstrate prejudice); *United States v. DiBernardo*, 552 F. Supp. 1315 (S.D. Fla. 1982) *on reconsideration in part,* 561 F. Supp. 783 (S.D. Fla. 1983) (dismissing indictments under supervisory powers). Even then, a dismissal for prosecutorial misconduct "is an extreme sanction which should be infrequently utilized." *Holloway,* 778 F.2d at 655 (citing *Pabian,* 704 F.2d at 1536).

Here, assuming the District Court could dismiss Matute's indictment,[5] Matute has offered no reason why it should do so. Matute does not allege that there was

---

[5]     It is not entirely clear whether a district court may exercise its inherent supervisory powers to dismiss an indictment several years after a defendant was convicted. *United States v. Dooling,* 406 F.2d 192, 196-98 (2d Cir. 1969) (district court lacked the power to dismiss indictment under its inherent powers after the jury

prosecutorial misconduct in his case or that the Government committed "flagrant or repeated abuses which are outrageous or shock the conscience" in prosecuting him. *Noriega*, 746 F. Supp. at 1535-36 (internal citations and quotations omitted). Nor can the Undersigned find any such misconduct or any constitutional infirmity in Matute's prosecution. To the contrary, as shown above, the application of the MDLEA to Matute's drug trafficking activities in international waters was constitutional. Accordingly, Matute has provided no cognizable basis for the District Court to dismiss Matute's indictment under its inherent supervisory powers.

### 3.   *Dismissal Under Federal Rule of Criminal Procedure 48(a)*

Matute argues that the Government may move to dismiss his indictment under Federal Rule of Criminal Procedure 48(a). [ECF No. 225, p. 9]. Matute reasons that a motion to dismiss under Rule 48(a) may be filed at any time because the rule contains no temporal limitations on its use and the courts have not imposed any such limitations.

Rule 48(a) provides, in relevant part, that "[t]he government may, with leave of court, dismiss an indictment, information, or complaint." Fed. R. Crim. P. 48(a). Rule 48(a)'s origins lie in the common law doctrine of *nolle prosequi*, literally translated "I am unwilling to prosecute." *Korematsu v. United States*, 584 F. Supp. 1406, 1410 (N.D. Cal. 1984); Wright & Miller, Federal Practice and Procedure, § 801 (4th ed. 2013). At common

---

verdict); *Pelullo v. United States*, 487 F. App'x 1 (3d Cir. 2012) (affirming denial of motion to dismiss indictment under inherent supervisory powers after defendant was convicted and exhausted his appellate and collateral proceedings).

law, the prosecutor could enter a *nolle prosequi* without approval of the court. *Confiscation Cases*, 74 U.S. (7 Wall.) 454, 19 L. Ed. 196 (1869). But in promulgating Rule 48(a), the Supreme Court added the requirement that only with leave of court could the prosecution dismiss a case. Nevertheless, the decision to prosecute, or alternatively to dismiss an indictment and not prosecute, remains with the prosecutor, not the court. *United States v. Cowan*, 524 F.2d 504, 513 (5th Cir. 1975) ("[t]he Executive remains the absolute judge of whether a prosecution should be initiated and the first and presumptively the best judge of whether a pending prosecution should be terminated"); *United States v. De Diego*, 511 F.2d 818, 824 (D.C. Cir. 1975) ("[d]iscretion to prosecute remains with the prosecutor").

It is difficult to decipher Matute's argument. To be sure, the Government on its own may move to dismiss his indictment under Rule 48(a),[6] but it has not done so. And,

---

[6]   Even if the Government did file such a motion, the Undersigned has serious reservations regarding whether Rule 48(a) may be invoked several years after a defendant was convicted. Contrary to Matute's claim that courts have imposed no temporal limit on Rule 48's application, two courts that have squarely considered the issue have found that "[t]here is no precedent for applying Rule 48 to vacate a conviction after the trial and appellate proceedings have ended." *Hirabayashi v. United States*, 828 F.2d 591, 607 (9th Cir. 1987); *Korematsu*, 584 F. Supp. at 1411. *See also United States v. Smith*, 467 F.3d 785, 789 (D.C. Cir. 2006) (not deciding the issue, but noting "that both the text of the rule and its roots in the common law doctrine of *nolle prosequi* cast doubt on Rule 48's applicability post-conviction"); *United States v. Brayboy*, 806 F. Supp. 1576, 1578-83 (S.D. Fla. 1992) (denying Government's motion to dismiss indictment after conviction and implying that Rule 48(a) applies to whether a pending prosecution may be dismissed). However, because the Government has not filed such a motion here, this issue is not before the District Court.

as Matute acknowledges, the Government is the "only party with standing" to move to dismiss his indictment under Rule 48(a). [ECF No. 225, p. 9]. To the extent that Matute is requesting the District Court to **order** the Government to file a motion to dismiss, the District Court "cannot require the government to file a dismissal." Wright & Miller, § 801 (citing *De Diego*, 511 F.2d at 824). Thus, because the Government has not filed a motion to dismiss and the District Court cannot require it to do so, there is nothing to adjudicate.

### 4.   *The MDLEA Does Not Violate the Fifth and Sixth Amendments*

In his reply, Matute argues for the first time that the MDLEA is unconstitutional because it provides that the judge, rather than the jury, decides whether a vessel is subject to the United States' jurisdiction for purposes of establishing a MDLEA violation. According to Matute, this makes the MDLEA unconstitutional because it violates his right to a jury trial on an element of the offense as provided for in the Fifth and Sixth Amendments.

However, Matute correctly recognizes that the Eleventh Circuit addressed and rejected this argument in *United States v. Tinoco,* 304 F.3d 1088 (11th Cir. 2002). The issue in *Tinoco* was the same one Matute raises here: "whether Congress can constitutionally provide that the MDLEA jurisdictional requirement is a non-element of the offense, thereby authorizing the judge to decide the issue, rather than the jury." *Id.* at 1106. The *Tinoco* Court answered the question in the affirmative and stated:

> Although the Due Process Clause and the Sixth Amendment right to a jury trial require that each element of a criminal offense be submitted to the jury for proof beyond a reasonable doubt, Congress made clear through the 1996 amendment to the MDLEA that the jurisdictional requirement is not an element of a § 1903(a) substantive offense, but rather is an issue that goes only to the subject matter jurisdiction of the federal courts. We also have concluded that Congress had the flexibility under the Constitution, at least with respect to the statutory jurisdictional requirement at issue in this case, to decide that the jurisdictional issue should be solely one of subject matter jurisdiction for the court to decide, and not an element of the MDLEA substantive offense. This is because the jurisdictional provision here is not a traditional element, or otherwise an essential ingredient, of a criminal offense.

*Id.* at 1111-12. Accordingly, because *Tinoco* remains the law in this circuit, Matute's argument must be rejected. *See United States v. Estupinan*, 453 F.3d 1336, 1339 (11th Cir. 2006).

## III.     CONCLUSION

For the reasons discussed above, the Undersigned **RESPECTFULLY RECOMMENDS** that the District Court **DENY** Matute's Motion.

## IV.     OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1) and Local Magistrate Rule 4(b), the parties have **21** days after being served with a copy of this Report and Recommendations to serve and file written objections, if any, with the District Court. Each party may file a response to the other party's objection within 14 days of the objection. The Undersigned is extending the objections time period because of Matute's prisoner *pro se* status. Failure to timely file objections shall bar the parties from a de novo determination by

the District Court of an issue covered in this Report and Recommendations and bar the

parties from attacking on appeal the factual findings contained herein. *LoConte v.*

*Dugger*, 847 F.2d 745, 749-50 (11th Cir. 1988), *cert. denied,* 488 U.S. 958 (1988).

      **RESPECTFULLY RECOMMENDED**, in Chambers, in Miami, Florida, August

20, 2013.

 

 

Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

 

 

**Copies furnished to**:
The Honorable Alan S. Gold

All counsel of record

Edil Rigoberto Galeas Matute, *pro se*
Reg. No. 76935-004
McRae Correctional Institution
Inmate Mail/Parcels
Post Office Drawer 30
McRae, GA 31055